576 So.2d 978 (1991)
Timothy FOX, et al
v.
BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE, et al.
No. 90-C-1200.
Supreme Court of Louisiana.
March 11, 1991.
Rehearing Denied April 25, 1991.
*979 Paul H. Due, Smith & Caballero, Charles William Roberts, David W. Robertson, Baton Rouge, for Timothy Fox, et al., plaintiffs-applicants.
J. Dwight LeBlanc, Jr., Kenneth J. Servay, New Orleans, amicus curiae.
Steven C. Judice, Adams & Reese, Baton Rouge, for Genstar Indem. Co., defendant-respondent.
H. Alston Johnson, III, F. Scott Kaiser, Phelps, Dunbar, Marks, Claverie & Sims, Baton Rouge, for Board of Sup'rs of LSU & Agricultural & Mechanical College and Employers Cas. Co., defendants-respondents.
James E. Moore, Franklin, Moore & Walsh, Baton Rouge, for Amer. Ins. Co. and Amer. Empire Surplus Lines Ins. Co., defendants-respondents.
Dan E. West, S. Jess Sperry, Valerie Seal Meiners, Rubin, Curry, Colvin & Joseph, Baton Rouge, for St. Olaf College and Pacific Employers Indem. Co., defendants-respondents.
William E. Willard, Powers, Vaughn & Clegg, Baton Rouge, for Illinois Nat. Ins. *980 Co. and Audubon Indem. Co., defendants-respondents.
Michael G. Cordes, Robert J. Young, Jr., Young, Richaud, Theard & Myers, New Orleans, for Amer. Empire Surplus Lines Co., defendant-respondent.
HALL, Justice.
Tim Fox and his parents, Denver and Nora Fox (hereinafter collectively referred to as plaintiff), brought this action for damages against St. Olaf College of Northfield, Minnesota; St. Olaf's insurers, Pacific Employers Insurance Company (Pacific) and American Empire Surplus Lines Insurance Co. (American); The Board of Supervisors of Louisiana State University (L.S.U.); and L.S.U.'s insurer, Employers Casualty Insurance Company (Employers). The trial court dismissed St. Olaf and its insurers on a declinatory exception of lack of in personam jurisdiction. The trial court also granted summary judgment in favor of L.S.U. and its insurer.
Plaintiff appealed and the court of appeal affirmed with respect to St. Olaf, L.S.U. and L.S.U.'s insurer. Fox v. Bd. of Sup'rs of La. State Univ., 559 So.2d 850 (La.App. 1st Cir.1990). However, the appellate court found that the trial court could assert personal jurisdiction over St. Olaf's insurer because they were doing business in Louisiana. Nonetheless, the appellate court dismissed the insurers under the doctrine of forum non conveniens.
On plaintiff's application, we granted writs to review those judgments. 565 So.2d 930 (La.1990). Writs were granted primarily to consider whether the doctrine of forum non conveniens is recognized in Louisiana as held by the First Circuit in this case, contrary to an earlier decision of the Fifth Circuit in Kassapas v. Arkon Shipping Agency, Inc., 485 So.2d 565 (La. App. 5th Cir.1986). There are other issues to be resolved, however, before the forum non conveniens issue is reached.

FACTS
Tim Fox, a student of St. Olaf College in Minnesota and member of the St. Olaf rugby club, was a participant in the 1986 Louisiana State Rugby Club Annual Mardi Gras Invitational Rugby Tournament held on the campus of L.S.U. in February of 1986. The St. Olaf club left Minnesota on February 5 in recreational vehicles and arrived in New Orleans on February 6, where they enjoyed the Mardi Gras festivities. The next day, the club traveled to Baton Rouge where they arrived at approximately 11:00 p.m. They attended a cocktail party hosted by the L.S.U. rugby club until about 2:00 in the morning. Later that morning, about 8:00 a.m., they played their first match of the day, and played a second match about 3:00 p.m. that afternoon. Near the end of the second match, Fox attempted to tackle an opposing ball carrier. Unfortunately, Fox missed the ball carrier, struck his head on the ground and broke his neck. He is now a quadriplegic and is confined to a wheelchair.

SUMMARY JUDGMENT (L.S.U.)
Plaintiff asserts in his brief that L.S.U. is liable for his injuries under two separate theories. First, L.S.U. is vicariously liable for the negligent conduct of the rugby club in:
(1) Throwing a cocktail party before the tournament;
(2) Scheduling two matches for the same day; and
(3) Failing to ascertain whether invitees were properly trained, coached or supervised.
Second, L.S.U. is liable in its own right for failing to ensure that the tournament was conducted with adequate safety.[1]
In support of these allegations and in opposition to defendants' motion for summary *981 judgment, plaintiff offered the affidavit of L. Stanley Shulman, Director of Athletics and Sports Safety Division of Inner-City Testing & Consulting Corporation. It was his opinion that L.S.U. owed a duty to inform the participants in the tournament that each team should have a coach/trainer/manager. By requiring each team to have this person, L.S.U. could "lessen the degree of risk associated with injuries related to lack of rest or conditioning," because the coach would know the capabilities of his players and make substitutions when needed. Furthermore, Mr. Shulman opined that the scheduling of two contests for one team per day was not in accordance with "good and accepted practices and procedures in athletic competition." He stated that the athletes would be "tired and prone to making mistakes, and more susceptible to injury" after participating in one match. Simply, his premise was that a fatigued athlete is more susceptible to injury than a rested athlete.
Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966. The appellate court found that summary judgment was proper in this case because a university has no affirmative duty to ascertain or inquire as to the level of fitness or preparedness of a visiting team participating in a tournament hosted by the university home team or club.
At issue in this case is whether L.S.U. owed a legal duty to plaintiff to protect him from harm. Generally, duty is defined as the obligation to conform to the standard of conduct associated with a reasonable man in like circumstances. Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. Seals v. Morris, 410 So.2d 715 (La.1981), on rehearing 410 So.2d 717 (La.1982); Straley v. Calongne Drayage & Storage, Inc., 346 So.2d 171 (La.1977).
The duty-risk analysis is helpful in determining liability in negligence actions. Thus, for liability to attach, plaintiff must establish that:
(1) The conduct in question was a cause in fact of the resultant harm;
(2) The defendant owed a duty to plaintiff;
(3) The duty owed was breached; and
(4) The risk or harm caused was within the scope of the breached duty. Mart v. Hill, 505 So.2d 1120 (La.1987); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972).
Plaintiff's theory of recovery against L.S.U. in a nutshell is that L.S.U. failed to sufficiently supervise the activities of the L.S.U. rugby club and is liable either vicariously for the club's negligence in conducting the tournament, or in its own right for failing to protect plaintiff from harm. Arguing that his injury was due to fatigue, he submits that if the L.S.U. rugby club had not held the cocktail party or scheduled two matches on the same day for his team, then he would not have been as fatigued and the injury would never have resulted. Furthermore, if L.S.U. had required the teams to have coaches/trainers, proper substitutions could have been made to avoid fatigue.
Typically, in cases such as this, where the alleged wrongful conduct of the defendant is a failure to act or "nonfeasance," courts have found it necessary for some definite relationship between the parties to exist, such that social policy justifies the imposition of a duty to act upon the defendant. W. Prosser & W. Keaton, The Law of Torts, § 56 (5th ed.)
In this case, one of L.S.U.'s recognized sports clubs invited the plaintiff to participate in a rugby tournament. The choice to participate was wholly within the discretion of the plaintiff. The only connection between L.S.U. and the plaintiff is that the plaintiff was injured on the parade grounds at L.S.U. However, plaintiff does not allege that his injury arose out of a defect in the playing field. There is no evidence to show that L.S.U. was in some special relationship with the plaintiff which *982 would require L.S.U. to act to ensure his safety.[2] The fact that a club at L.S.U. invited plaintiff's team to L.S.U. does not make L.S.U. the guardian of all of the participants' safety. Of course, L.S.U. must ensure that its premises are free from defects and are suitable for activities conducted there. The parade ground is used often by students of L.S.U. and the general public for athletic activity. To require L.S.U. to ensure the athletic ability of everyone utilizing this area would be too onerous.
The plaintiff was not a student at L.S.U. and he fails to show any special relationship between himself and the university which would require the university to act on behalf of his safety. The petition does not allege that L.S.U. acted unreasonably, only that it failed to act, and for the above reasons we find that L.S.U. had no duty to act as contended by the plaintiff.
Insofar as the allegations against L.S.U. allege that L.S.U. should have controlled the conduct of the L.S.U. rugby club and is vicariously liable for the club's alleged negligent acts, we find the reasoning of the following cases persuasive.
In University of Denver v. Whitlock, 744 P.2d 54 (Colo.1987), plaintiff was rendered a quadriplegic in a trampoline accident. The issue presented by the case was whether the University of Denver owed a duty to Whitlock, a student of the university and fraternity member, to protect him from the dangers of trampoline use, when the trampoline was located in front of a fraternity house on the campus of the university. Since plaintiff argued that the university was negligent for "nonfeasance," failing to act, the court found it necessary to find a special relationship between the plaintiff and the university in order to impose a duty on the university to act for the protection of the plaintiff. Examining the modern university student relationship, the court stated:
"At one time, college administrators and faculties stood in loco parentis to their students, which created a special relationship `that imposed a duty on the college to exercise control over student conduct and, reciprocally, gave the students certain rights of protection by the college.' However, in modern times there has evolved a gradual reapportionment of responsibilities from the universities to the students, and a corresponding departure from the in loco parentis relationship. Today colleges and universities are regarded as educational institutions rather than custodial ones. `Their purpose is to educate in a manner which will assist the graduate to perform well in the civic, community, family and professional positions he or she may undertake in the future.' A university seeks to foster the maturation of its students ... In today's society, the college student is considered an adult capable of protecting his or her own interests; students today demand and receive increased autonomy and decreased regulation on and off of campus." University of Denver v. Whitlock, supra at pp. 59-60. (citations omitted).
Thus, in an attempt to foster the educational process, growth and maturation of students, the court found that the university owed no duty to take measures to protect the plaintiff because the relationship between them was not one of dependence.
In Hanson v. Kynast, 24 Ohio St.3d 171, 494 N.E.2d 1091 (1986), plaintiff received a paralyzing injury during a lacrosse game between his school, Ashland University, and Ohio State University. During the game, an O.S.U. player intercepted an Ashland player's pass and scored a goal. Ashland defender, William Kynast, body checked the O.S.U. player as the goal was scored. The O.S.U. scorer fell to the ground and Kynast stood over him and taunted him. Out of concern for the O.S.U. scorer, plaintiff grabbed Kynast in a bear hug. Kynast twisted and Hanson fell to the ground on his head sustaining serious injury. At issue in the case was *983 whether Ashland could be held accountable for the actions of Kynast.
The court analyzed the issue in terms of agency and determined that Kynast was not an agent for Ashland. The court characterized the university student relationship this way:
"A university offers a diversified educational experience which includes classroom instruction in a great variety of subjects as well as optional participation in events such as school clubs, and intramural and intercollegiate sports. All of these offerings are designed to expand and enrich a student's overall educational experience. Students evaluate and determine which university best meets their needs, and then pay a fee to attend that university ... In exchange, the university provides the student with a worthwhile education." Hanson v. Kynast, supra 494 N.E.2d at 1094.
In this case, one of the opportunities offered in the L.S.U. educational experience was the option to voluntarily participate in clubs including the rugby club. Though L.S.U. required the club to submit its charter to the school for approval, required the club to have a faculty advisor, provided the club with some financial assistance, limited office space and equipment, and allowed the use of the parade grounds for the tournament, these actions did not automatically obligate L.S.U. to scrutinize all of the club activities, nor does it make the club an arm of the university. Part of the educational experience is responsibility gained through the autonomy of operating a club without the administration or faculty second guessing every decision. The participants in the rugby club knew full well the dangers involved in this activity, but chose to participate voluntarily. Though there are risks associated with any athletic endeavor, especially those involving intentional bodily contact, the experiences gained from being part of a team, such as team work, camaraderie, friendship, exercise, team spirit and responsibility, make it reasonable for participation by the students and reasonable for the school to allow the conduct.
The task of supervising every group, club, or organization at L.S.U. would involve countless man hours and a large budget. Rather than prohibiting the existence of these groups, L.S.U. allowed students to run the clubs. Even if the rugby club was negligent, which we do not decide, L.S.U. cannot be held accountable for their negligence.
Since L.S.U. was in no special relationship with plaintiff, we find that L.S.U. had no affirmative duty to act in protection of his safety. Likewise, we find that L.S.U. had no duty to monitor the actions of the L.S.U. rugby club insofar as the conducting of this tournament is concerned. We therefore affirm the dismissal of L.S.U. and its insurer from this case on summary judgment.

IN PERSONAM JURISDICTION (ST. OLAF)
Plaintiff contends that St. Olaf had sufficient contacts with Louisiana such that the assertion of personal jurisdiction over the college would not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Both the trial court and appellate court ruled otherwise.
Since the 1987 amendment to LSA-R.S. 13:3201, the sole inquiry in Louisiana into jurisdiction over a nonresident is whether the assertion of jurisdiction complies with constitutional due process. Superior Supply Company v. Associated Pipe & Supply Company, 515 So.2d 790 (La.1987). The limits of the Louisiana long arm statute and the limits of constitutional due process are coextensive and therefore, if the assertion of jurisdiction meets the constitutional requirements of due process, the assertion of jurisdiction is authorized under the long arm statute. Superior Supply, supra at 792.
A perpetual stream of personal jurisdiction law finds its fountainhead in the landmark U.S. Supreme Court decision of International Shoe Co. v. Washington, supra. There, the court held that personal *984 jurisdiction may be asserted over a nonresident who has "certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."
Thirty-five years later in Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the court found that Oklahoma could not assert jurisdiction over a nonresident whose only connection with the state was that a car it had sold was involved in an accident in the state. In analyzing whether personal jurisdiction was permissible in that case, the court found that a defendant's connection with the forum state should be sufficient for him to "reasonably anticipate being haled into court there."
In Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the court allowed an assertion of personal jurisdiction over a nonresident who had never physically entered the forum state. The nonresident had established a contractual relationship with a company domiciled in the forum state. Because the nonresident had purposefully directed his activities toward the forum state and failed to show other conditions that would render the assertion of jurisdiction unreasonable,[3] the court concluded that the assertion of personal jurisdiction comported with notions of fair play and substantial justice.
More recently, in Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the personal jurisdiction question was again examined. A motorcycle accident occurred in California and the plaintiff sued the Taiwanese manufacturer of the motorcycle tire tube and the Japanese manufacturer of the motorcycle tire tube valve assembly. The plaintiff settled his case, and the only claim remaining in the California court was between the tube manufacturer and the valve assembly manufacturer. The Japanese corporation's exception to personal jurisdiction was maintained. The plurality opinion reasoned that the defendant's conduct must be more purposefully directed at the forum than the mere placing of the product in the stream of commerce. Concurring justices found that the exercise of jurisdiction would be unreasonable because there was an insufficient relationship between the defendant, the forum state and the indemnity litigation.
Finally, in considering the personal jurisdiction question, it is helpful to analyze the defendant's contacts in terms of whether the litigation arises out of those contacts, specific jurisdiction, or whether the contacts between the defendant and forum state are so significant that the cause of action need not arise out of the contacts, general jurisdiction. See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).
Plaintiff asserts in his petition that this is a specific jurisdiction case because the litigation arises out of St. Olaf's contacts with this state, i.e. the rugby team's tortious conduct while in this state. However, St. Olaf contends that it is not responsible for the rugby club because it did not send the rugby club to Louisiana or sponsor the trip. In the alternative, plaintiff claims that St. Olaf's contacts with Louisiana through fund raising, alumni functions and recruiting are significant enough to assert personal jurisdiction over them under a theory of general jurisdiction.
Plaintiff claims that his efforts to establish a relationship between the St. Olaf rugby club and the school through discovery have been thwarted by St. Olaf. Thus, he submits that St. Olaf must establish facts necessary to show that the exception should be sustained, citing Guidry v. Cajun Rentals & Services, Inc., 563 So.2d 1335 (La.App. 3d Cir.1990) and Bowman v. Weill Construction Co., 502 So.2d 133 (La. App. 3d Cir.1987).
In support of its claim that it had no control over the rugby club, St. Olaf produced the affidavit of William C. Komsi, the Vice President and Treasurer at St. *985 Olaf. He averred that St. Olaf did not (1) have a rugby team in its athletic department; (2) provide a coach or advisor to the club; (3) supply the club with athletic equipment or uniforms; or (4) arrange for the rugby club to participate in the Baton Rouge tournament. Plaintiff submits newspaper clippings to this court which purportedly show that St. Olaf did provide a faculty advisor and may have had more involvement with the rugby club than claimed by the college.
Even if the newspaper clippings could provide a more tangible connection between the college and rugby club, we do not feel that the evidence shows that the club was an extension of St. Olaf or that the club was furthering a purpose of the school by representing the school in this tournament. The club itself arranged for the transportation. Club members were responsible for their lodging; plaintiff slept in a recreational vehicle rather than a hotel for financial reasons. The club arranged for its participation in this tournament and the college's only connection with the tournament was that this club bore its name.
On this record, and for purposes of deciding this jurisdictional matter only, we conclude that the contacts of the rugby club with Louisiana are not attributable to the college and thus personal jurisdiction cannot be asserted over St. Olaf under a theory of specific jurisdiction.
We nevertheless must also examine St. Olaf's other contacts with the state to determine if they are sufficiently "present" to assert personal jurisdiction under a theory of general jurisdiction.
The other contacts that St. Olaf has with Louisiana all arise from either the recruitment of students or the maintenance of relationships with alumni. To this end, St. Olaf purposely directs activity towards Louisiana. Louisiana residents are from time to time enticed to attend the school. In 1986, St. Olaf's records showed that 42 alumni provided the school with Louisiana addresses, and St. Olaf had two Louisiana residents as students. St. Olaf also raised a small amount of money in contributions from Louisiana residents.
In February of 1984, the president of the college attended a meeting in New Orleans of a council of college presidents. An alumni dinner was held in that same month at a New Orleans restaurant. There have been other gatherings of St. Olaf alumni in Louisiana hosted by Louisiana residents.
Though St. Olaf purposely directed its activity toward Louisiana, we do not feel that the quality and consistency of the contact in this case could reasonably alert St. Olaf to the possibility of being haled into court here, especially when the suit does not arise from the activity.
St. Olaf is a small college with a negligible recruitment effort in Louisiana. Unlike Jackson v. Bishop College, 359 So.2d 704 (La.App. 1st Cir.1978), this suit does not arise out of the recruitment activities.[4] In this case, involving a small private college from Minnesota, the recruiting does not rise to a significant level such that the college would anticipate being haled into court in Louisiana for unrelated causes of action. We therefore affirm the trial court's dismissal of St. Olaf college on the declinatory exception of lack of personal jurisdiction.

PERSONAL JURISDICTION (ST. OLAF'S INSURERS)
The trial court also dismissed St. Olaf's insurers for lack of personal jurisdiction. The appellate court found that personal jurisdiction could be asserted over the insurers because they were "doing business" in Louisiana. Pacific, as primary insurer for St. Olaf, filed an extensive brief on this issue, while American has adopted the arguments set forth in Pacific's brief as its own.
Pacific claims that the court of appeal reached the correct result in dismissing the action against it, but that it should have *986 done so for lack of personal jurisdiction. Though Pacific admits that it has "minimum contacts" with Louisiana, it submits that the exercise of jurisdiction would be unreasonable and unfair.
Factors considered in determining whether the assertion of personal jurisdiction comports with notions of fair play and substantial justice are:
(1) The burden on the defendant;
(2) The forum state's interest in the dispute;
(3) The plaintiff's interest in obtaining convenient and effective relief;
(4) The judicial system's interest in obtaining an efficient resolution of controversies; and
(5) The state's shared interest in fostering fundamental substantive social policies. Burger King, 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543.
Louisiana is interested in this suit to the extent that a person was injured on the campus of its flagship university. Furthermore, that person has sought the application of Louisiana's direct action statute, LSA-R.S. 22:655, and has chosen to litigate his claim in the state where the accident occurred. Plaintiff's choice of forum is due some deference, but it is noted that Louisiana is not the plaintiff's home state. The burden on the insurance companies is recognized in that the majority of the witnesses in the claim against their insured will be in Minnesota; but in a modern world of video tape, air travel, fax machines and conference calling, the burden of deposing the witnesses or gathering information in Minnesota is not great. There are witnesses in Louisiana where the tournament was staged and the accident happened. As long as L.S.U. remained a defendant, Louisiana courts offered the most efficient forum for resolution of the controversies, and considering the time the case has been pending here, steps that have been taken in the pending litigation, and its current status, Louisiana may yet be the most efficient forum. Louisiana has a shared interest in the substantive social policy of redress for persons injured in this state. Balancing all of the factors, we conclude that it would not be unreasonable to assert personal jurisdiction over the insurance companies. They do substantial business in this state, and certainly anticipate being haled into court in Louisiana. The burden is not so great on the defendant that litigating the claim would be overly burdensome.
Louisiana has jurisdiction over the person of the defendant insurance companies.

FORUM NON CONVENIENS
Having determined that the exercise of jurisdiction over the insurers would be reasonable, we next turn to the question of forum non conveniens.
Plaintiff submits that the common law doctrine of forum non conveniens is foreign to Louisiana, except for the legislative enactment found in LSA-C.C.P. Art. 123, and thus the court of appeal erred in dismissing this action on that theory. Plaintiff relies on the cases of Markzannes v. Bermuda Star Line, Inc., 545 So.2d 537 (La.1989); Kassapas v. Arkon Shipping Agency, Inc., 485 So.2d 565 (La.App. 5th Cir.1986); Trahan v. Phoenix Insurance Company, 200 So.2d 118 (La.App. 1st Cir.1967); and Chaney v. Williher, 205 So.2d 770 (La.App. 1st Cir.1967), to support that proposition.
Pacific contends that dismissal based on forum non conveniens is within the inherent power of Louisiana courts, relying on Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); Stewart v. Litchenberg, 148 La. 195, 86 So. 734 (1920); Smith v. Globe Indemnity Co., 243 So.2d 882 (La.App. 1st Cir.1971); and Union City Transfer v. Fields, 199 So. 206 (La.App. 1st Cir.1940).
The principle of forum non conveniens is invoked when a court is a court of competent jurisdiction and venue; the principle being that a court can decline to exercise its jurisdiction in certain extraordinary cases. Gulf Oil v. Gilbert, supra. The purpose behind the doctrine is two-fold, ensuring that the forum is fair and convenient to the parties and not a forum chosen by the plaintiff merely to harass the defendant, and allowing courts a mechanism to *987 regulate crowded dockets by ensuring that cases of no interest to the particular community where the case is filed can be moved to a more appropriate forum.
Some have cautioned that a Louisiana without a forum non conveniens doctrine would be subjected to a flood of litigation, burdening the courts and juries with trials in which they have no interest, Duplantier, Louisiana: A Forum Conveniens Vel Non, 48 L.L.R. 761 at 787; others have dismissed this warning as unsupported by actual occurrence. See Dow Chemical Co. v. Castro Alfaro, 786 S.W.2d 674 (Tex.1990), Doggett concurring at p. 686, particularly footnote 9. In Kassapas, the court found that the doctrine of forum non conveniens other than that specified at LSA-C.C.P. Art. 123 is foreign to our law, and that any other finding would be "judicial legislation of the rankest sort," citing Trahan v. Phoenix Insurance Co., 200 So.2d 118, 122 (La.App. 1st Cir.1967). The issue to be resolved in this case is whether Louisiana courts are endowed with the inherent power to decline to exercise its jurisdiction in rare but appropriate cases. If so, was this case properly dismissed under an application of that doctrine.
The Louisiana Constitution of 1974 provides:
"All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation or other rights." LSA-Const. Art. 2, § 22.
However, this constitutional guarantee of access to the courts is not absolute. We previously stated, when a claimant is asserting a right not subject to special constitutional protection, access to the courts may be restricted if there is a rational basis for the restriction. Everett v. Goldman, 359 So.2d 1256 (La.1978).[5]
There is authority in Louisiana to support both sides of this dispute. Before the United States Supreme Court's ruling in Gulf Oil, this court considered the dismissal of an action on a ground that would today be termed forum non conveniens. Stewart v. Litchenberg, 148 La. 195, 86 So. 734 (1920). In Litchenberg, we found that a Louisiana court has no duty to exercise jurisdiction stating:
"... under the rule of comity, between the several states, the courts of the one may, in their discretion, entertain jurisdiction over controversies, where personal citation is had within their territorial limits, between the citizens of other states, when it is within their power to do full and complete justice between the parties. But this power arises from no duty or inherent right in the litigants, and solely under the rule of comity referred to. Hence, when it appears that they may not be capable of doing full and exact justice between the parties because of a want of knowledge of the laws of another state, or where the amount involved is small, and the defendant will be subjected to great and unnecessary expense and inconvenience, and the investigation will be surrounded with great difficulties, which can be avoided by suing at the defendant's domicile, courts may, and generally do, decline jurisdiction." See Litchenberg, supra, at p. 736.
Finding that grounds sufficient to decline jurisdiction were not shown, this court declined to overturn the trial court's exercise of jurisdiction.
Later, in an almost identical case, Union City Transfer v. Fields, 199 So. 206 (La. App. 1st Cir.1940), relying on Litchenberg, suit between out-of-state residents was dismissed on the theory enunciated by the Litchenberg court. Finally, in Smith v. Globe Indemnity Co., 243 So.2d 882 (La. App. 1st Cir.1971), the court specifically applied the doctrine of forum non conveniens *988 as enunciated in Gulf Oil, but determined that Louisiana was an appropriate forum.
However, the same court which decided Union City Transfer and Smith v. Globe Indemnity, stated in Trahan v. Phoenix Insurance Company, 200 So.2d 118 (La. 1st Cir.1967) and Chaney v. Williher, 205 So.2d 770 (La. 1st Cir.1967), that the doctrine of forum non conveniens has no application to actions brought in this state.
The Trahan case was not a case involving nonresident litigants. The issue in Trahan was whether a Louisiana district court could transfer the case to another district court in Louisiana which was a more appropriate venue. A reading of the venue transfer statute, LSA-C.C.P. Art. 122[6], convinced the court that cases could only be transferred from an authorized venue to another venue upon a showing that the venue in which suit was brought would not be a fair and impartial setting. The case did not involve nonresident or foreign litigants seeking to invoke the protection of Louisiana courts. The same holds true for Chaney.
More recently, the Kassapas court, as stated previously, found no statutory authority for the invocation of forum non conveniens, and refused to dismiss a case involving foreign litigants, where the cause of action arose outside of Louisiana.[7] Finally, in Markzannes v. Bermuda Star Line, Inc., 545 So.2d 537 (La.1989), we found that LSA-C.C.P. Art. 123 does not authorize forum non conveniens dismissal for Jones Act or general maritime law cases. Plaintiff argues that this opinion implied that Louisiana has no other forum non conveniens than that enunciated in Article 123.[8]
Article 123 of the Code of Civil Procedure[9] was originally added to the Code purportedly to legislatively overrule the Trahan case. See Comment 1970, LSA-C. C.P. Art. 123. In 1988, paragraphs B and C were added to the article. Under the article as it now reads, cases may be transferred within the Louisiana court system to other courts of competent jurisdiction and venue for the sake of convenience and in the interest of justice. Also, actions based solely upon a federal statute and acts and omissions originating outside of the state can be conditionally dismissed without prejudice where there is a more appropriate forum outside of the state, except for those cases which arise under the Jones Act or federal maritime law. LSA-C.C.P. Art. *989 123; Markzannes, supra. There is no argument that this case could be transferred under an application of Article 123. Thus, the sole question remaining is whether Louisiana courts have some inherent power, independent from the power granted in Article 123, to dismiss cases based upon a theory of forum non conveniens. We conclude that they do not.
In other states, the answer to the question of the existence of inherent power for applying forum non conveniens is solved differently. For instance, the Kansas Supreme Court found that the doctrine of forum non conveniens was within the power of Kansas courts because it was part of the common law; since the common law continued to be part of the law of Kansas, the doctrine of forum non conveniens could be applied without statutory authority. Gonzales v. Atchison Topeka & Santa Fe Railway Co., 189 Kan. 689, 371 P.2d 193 (1962). Oklahoma's highest court concluded likewise in Gulf Oil Co. v. Woodson, 505 P.2d 484 (Okla.1972). Obviously, the common law is not a part of Louisiana law and this approach cannot serve as a basis for finding that Louisiana courts have the inherent power to dismiss for forum non conveniens.
Recently, in Chambers v. Merrell-Dow Pharmaceuticals, 35 Ohio St.3d 123, 519 N.E.2d 370 (1988), the court found that Ohio courts could dismiss cases for forum non conveniens, even though no statute or rule of procedure provided for dismissal on this basis. Applying the Gilbert public and private factors, the court affirmed the dismissal of the case by the district court, stating that the power to dismiss was within the inherent power of the court. The fact that no statute or procedural rule provided for the dismissal convinced two justices of that court to dissent. In Summa Corporation v. Lancer Industries, Inc., 559 P.2d 544 (Utah 1977), Utah's Supreme Court found the inherent power existed to dismiss for forum non conveniens, but ruled that the facts of that particular case did not justify dismissal.
Our neighboring state of Texas recently found that a Texas open forum statute prevented its courts from dismissing certain cases for forum non conveniens. Dow Chemical v. Castro Alfaro, supra. Such a statute is not at issue in this case.
The minority view was espoused in Lansverk v. Studebaker-Packard Corporation, 54 Wash.2d 124, 338 P.2d 747 (1959), where the court stated:
"We find nothing in our constitution, our statutes, our rules, or our decisions that recognizes the existence of any discretion in the superior court of any county to decline to exercise the jurisdiction with which it is vested by the constitution and our statutes because of forum non conveniens."
Thus, the court held that the doctrine was not a part of the law of Washington. Contributing to the court's decision was the fact that the court was "not satisfied that the application of the doctrine does not create more problems than it solves." Simply, the experience in Washington was not such that plaintiffs often brought suit there to harass defendants. Inasmuch as the forum for litigation should normally be fairly certain, the doctrine did nothing to foster certainty. Instead, it created uncertainty and confusion as to choice of forum and created delay in the litigation. Because the problems of confusion and delay created by the application of the doctrine outweighed any benefit gained from dismissing because of inconvenience to the parties, Washington's highest court declined to adopt the doctrine.
Legal scholars have accredited the Scottish doctrine of forum non competens as the source of forum non conveniens. Barrett, The Doctrine of Forum Non Conveniens, 35 Calf.L.Rev. 380 (1947); Dow Chemical v. Castro Alfaro, supra. The doctrine spread to England around the turn of the century as evidenced by the ruling in Logan v. Bank of Scotland, 1 K.B. 141 (1905). Paxton Blair has been cited as the first to introduce the phrase "forum non conveniens" to America. See Dow Chemical v. Castro Alfaro, supra, citing Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Colum.L.Rev. 1 (1929).
*990 Blair noted in his article that only a few cases specifically used the term "forum non conveniens," but cited many cases which had applied the principle "without consciousness of what they were doing." Blair, at pp. 21-22. Our previous decision in Litchenberg could be classified as such a decision. Both the plaintiff and defendant were residents of Nebraska. Plaintiff sued defendant in Louisiana over a contract dispute involving property in Louisiana. The defendant filed an exception of lack of personal jurisdiction. The defendant was cited and served in Louisiana under a Code of Practice article providing that foreigners could be cited wherever they are found. In Litchenberg, we stated:
"Our opinion is that this provision of our law was intended for the benefit of the citizens of this state to enable them to assert their claims against foreigners or residents of other states, or those having no known residence or domicile, when found within the state, and to afford adequate relief in cases where, otherwise, they would have none under our law, and to save the necessity in such cases of having to resort to foreign tribunals for that purpose. We are also equally of the opinion that it was not intended to permit foreigners or citizens of other states, in no way owing allegiance to this state or its laws, to invoke the offices of our courts in determining controversies between them and other foreigners or nonresidents at their pleasure, when they have their adequate remedy in their own courts or those of their adversaries."
Yet, this court agreed to entertain jurisdiction over the defendant as a matter of "comity," because the defendant had not urged what today would be referred to as an exception of forum non conveniens. In summary, the case holds that Louisiana courts have discretion to exercise jurisdiction when litigants are non-residents.
Though the doctrine of forum non conveniens has no counterpart in French law, Dainow, The Inappropriate Forum, 29 Ill. L.Rev. 867, 891 (1935); Braucher, The Inconvenient Forum, 60 Harv.L.Rev. 908, we find this fact to be of little relevance to our determination. Dainow explains in his article that the doctrine was unneeded in the French system of courts. Unlike the English and American courts, French law mandates the closure of French courts to foreign litigants. Dainow, supra, at 885. Rather than providing for the dismissal of unwanted litigation, French courts sought to provide exceptions to the closed forum rule so that certain cases could be heard. Louisiana, in this instance, is more akin to the common law approach of providing an open forum. Nevertheless, under either approach, the ultimate goal is to ensure that there is a forum for litigation which is fair and provides justice to the parties.
The doctrine is established as a means of dismissal in virtually all of the other states, leaving only a small minority of states without the doctrine. Even though Louisiana's system of courts is like the majority of American courts in terms of openness, we place Louisiana among the minority and hold that Louisiana courts may not dismiss cases for forum non conveniens except for the cases provided in LSA-C.C.P. Art. 123. To the extent Stewart v. Litchenberg provides otherwise, it is overruled.
Pacific cites language from the long arm statute, LSA-R.S. 13:3201, asserting a legislative mandate for discretionary exercise of jurisdiction. Specifically, Pacific points to the "may exercise jurisdiction" language in the statute for support of its argument. Otherwise, the parties agree that statutory authority for forum non conveniens dismissal does not exist outside of LSA-C.C.P. Art. 123. The "may exercise" language relates to circumstances where the exercise of jurisdiction is constitutionally permissive. In other words, the court is permitted to exercise jurisdiction without violating the constitution when the criteria listed in the long arm statute are met. The language does not relate to the court's discretion to dismiss once it determines that it has jurisdiction.
Finally, the power to legislate in terms of both substance and procedure has traditionally been left to the legislature. This principle guides us in part in reaching this *991 decision. By authorizing forum non conveniens dismissal in only limited circumstances, it can be said that the legislature intended that this procedural device not be available in circumstances not specified in Article 123. Furthermore, the doctrine has been presented to the legislature on other occasions. Included in the proposals was a provision which would have authorized forum non conveniens dismissal based upon the trial court's discretion. However, the legislature has refused to pass such a statute. Duplantier, Louisiana: A Forum Conveniens Vel Non, supra, at pp. 772-773. Rather than establish a jurisprudential procedural device for declining jurisdiction where it is otherwise vested by the legislature, we choose to find that the power to dismiss for forum non conveniens is not within the inherent power of Louisiana courts as part of the basic law of this state, as courts have held to be the case in most common law states.

DECREE
In conclusion, for the foregoing reasons, the summary judgment in favor of Louisiana State University and its insurer, Employers Casualty Insurance Company, is affirmed. The judgment dismissing St. Olaf College of Northfield, Minnesota for lack of personal jurisdiction is likewise affirmed. The judgment dismissing Pacific Employers Insurance Company and American Empire Surplus Lines Insurance Co. is reversed. The case is remanded to the district court for further proceedings not inconsistent with this opinion.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
DENNIS, J., concurs in part and dissents in part and assigns reasons.
WATSON, J., concurs in part and dissents in part, assigning reasons.
COLE, J., respectfully dissents from the holding there is no personal jurisdiction over St. Olaf, otherwise concurs.
WATSON, Justice, concurring in part and dissenting in part:
The court of appeal erred seriously in saying that the doctrine of forum non conveniens obtains in Louisiana; I applaud the majority's treatment and conclusion to the contrary. To hold otherwise would conflict diametrically with the open courts provision of the 1974 Constitution. Therefore, I concur with the majority's view that there is no forum non conveniens doctrine in this state.
Disagreeing with the analysis of LSU's relationship to the rugby club and believing there are factual matters to be decided, I do not believe that summary judgment, dismissing the university, is appropriate. I respectfully dissent from the affirmation of the summary judgment.
Additionally, the allowance of personal jurisdiction over St. Olaf does not offend my idea of justice and fair play. It must be remembered that Louisiana has extended jurisdiction to the greatest constitutional limits.
"... a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution [of Louisiana and the United States]." LSA R.S. 13:3201 B. See Fryar v. Westside Habilitation Center, 479 So.2d 883 (La.1985).
The college sponsored a rugby team much in the manner of LSU, most certainly acceding to the fact that the team would go on the road and play in other states. Here they came to Louisiana, with which St. Olaf had already more than simply minimum contacts, and entered a tournament as St. Olaf's team. Surely there would have been cheering at the college and a headline in the school paper had the rugby team been victorious; instead there was a tragedy. St. Olaf cannot be heard to say that the institution has nothing to do with the team. I respectfully dissent from the sustaining of the exception to personal jurisdiction.
NOTES
[1] The plaintiff's petition does not allege the vicarious liability of L.S.U. or the negligence of having a cocktail party. It also does not allege that L.S.U. was negligent in failing to see that the tournament was safely conducted. Paragraphs 3 and 7 of the petition allege that L.S.U. was negligent in scheduling more than one match per day and in failing to ascertain whether the invitees were properly trained, coached or supervised. Nevertheless, we consider all of the claims asserted in plaintiff's brief.
[2] The evidence shows that the matches were conducted with proper officials, with some rule modifications on substitutions, and time limits. Each team was responsible for its own uniforms and equipment.
[3] Factors considered in determining if the assertion of jurisdiction is reasonable are discussed more fully infra. See personal jurisdiction over St. Olaf's insurers.
[4] Some schools in surrounding states may recruit in Louisiana so heavily that an exercise of jurisdiction on that ground may be reasonable.
[5] Of course the case was speaking to legislative enactments. Access to the courts has been held permissibly restricted when:

a. appellate court charged a filing fee for welfare recipient, Ortwein v. Schwab, 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973); and
b. state statute required payment of fees and court costs by bankruptcy applicant. U.S. v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973).
[6] LSA-C.C.P. Art. 123 was nonexistent at the time. In response to Trahan, the legislature enacted Art. 123 upon the recommendation of the Law Institute. See discussion infra.
[7] Jurisdiction was obtained over defendants by seizing a vessel docked in the Port of New Orleans.
[8] The parties agree that the article would not authorize dismissal of this case.
[9] LSA-C.C.P. Art. 123 reads as follows:

"A. For the convenience of the parties and the witnesses, in the interest of justice, a district court upon contradictory motion, or upon the court's own motion after contradictory hearing, may transfer a civil case to another district court where it might have been brought; however, no suit brought in the parish in which the plaintiff is domiciled, and in a court which is otherwise a court of competent jurisdiction and proper venue, shall be transferred to any other court pursuant to this Article.
"B. Except as provided in Paragraph C, upon the contradictory motion of any defendant in a civil case filed in a district court of this state in which a claim or cause of action is predicated solely upon a federal statute and is based upon acts or omissions originating outside of this state, when it is shown that there exists a more appropriate forum outside of this state, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interest of justice, the court may dismiss the suit without prejudice; however, no suit in which the plaintiff is domiciled in this state, and which is brought in a court which is otherwise a court of competent jurisdiction and proper venue, shall be dismissed pursuant to this Article. In the interest of justice, and before the rendition of the judgment of dismissal, the court shall require the defendant or defendants to file with the court a waiver of any defense based upon prescription, provided that a suit on the same cause of action is commenced in a court of competent jurisdiction within sixty days from the rendition of the judgment of dismissal.
"C. The provisions of Paragraph B shall not apply to claims brought pursuant to 46 USC § 688 or federal maritime law."