624 So.2d 1308 (1993)
Jennifer FISHER, Plaintiff-Appellee,
v.
NORTHWESTERN STATE UNIVERSITY, et al., Defendants-Appellants.
No. 92-989.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1993.
Joseph Texada Dalrymple, Alexandria, for Jennifer Fisher.
Steven W. Cook, Alexandria, for Northwestern State University, et al.
Before DOMENGEAUX, C.J. and GUIDRY, YELVERTON, KNOLL and SAUNDERS, JJ.
YELVERTON, Judge.
This appeal arises out of a cheerleading accident at Northwestern State University.
On October 3, 1990, Jennifer Fisher and her partner, Scott Simmons, who were cheerleaders for Northwestern, were attempting to perform a partner stunt known as a "cupie". A cupie is a stunt in which the bottom person, using both arms, extends the top person to above his head. He then guides the top person's left foot to the right until both feet are together in his right hand. In this case, Scott was the bottom and Jennifer was the top. As Scott pushed Jennifer up, she fell and hit the ground, breaking her left ankle.
*1309 Jennifer filed suit against Northwestern and Scott. Prior to trial, she released Scott and his insurer. After trial, the district trial court found Jennifer 35% at fault for the accident and Northwestern 65% at fault. It awarded $74,448.50 in damages. Northwestern appealed. We reverse.

LIABILITY
Jennifer's theory of recovery against Northwestern was that Northwestern should have provided adult supervision of cheerleading and stunting, and that it failed to provide any such supervision. She contends that because of this failure, she and her partner, Scott Simmons, were permitted to attempt a cupie stunt which required skill beyond their level of training, the stunt was unsuccessful, and she fell and was injured. The trial court agreed, holding that some adult supervision was necessary in the case, and that Northwestern had failed to provide that adult supervision. In oral reasons for judgment, the trial court said:
The question before the Court today is not necessarily one of the technique employed on the particular stunt that was injury causing. I don't find fault with any of the participants of that particular stunt, or the squad in general. The fault I find comes from the existence of a setting that allows this to get to this point without a State check. Mr. McKinley, I think, further had said some type of accident in Jennifer's case was inevitable. I just feel the State has a duty to prevent inevitable situations of accidents, especially in activities that it encourages. The Court found Dr. George's testimony to be extremely credible in dealing with the progression of stunts and the need to have somebody to monitor when it's safe to go to the next stunt. Apparently the students involved in this particular incident had received some training; however, the distinction of kids versus adults is kind of lost on this particular Court because the same adults who were performing, or kids who were performing the stunts are also the ones that were in control of it. And, I mean, whatever maturity level they had the State owed the obligation to have something further. While I find the State is liable for the injuries, I do find that JenniferPlaintiff in the particular case, contributed to the injury and find that comparative negligence would apply in the present case. The Court finds Jennifer is probably as sophisticated or as experienced a cheerleader as you're gonna find in a college freshman. With the training that she had and the family support that she had and the camps that she had been to, as well as her degree of skill. Her ability to do a cupie with the try-outs [sic] and her knowledge of cheerleading in general has to bring an appreciation of the dangers involved in cheerleading. On several occasions at the camp she had been advised that if you're uncomfortable doing something, don't do it. And being aware of the dangers, knowing that the particular incident involved a riskand generally and specifically with Scott, who she had had experience with in the past, the Court finds that she did contribute. She has an obligation as a sophisticated cheerleader to protect herself some. A lot was said about the peer pressures and the rest of it. This is a competitive event. I understand you're competing for positions on staff, positions on the team, what stunt you get to perform in public for the games. So there was a certain degree of pressure, but that cannot override a known danger completely. The Court finds that in this particular case, Jennifer would have contributed, or would be assessed with comparative negligence in the amount of thirty-five percent.
The plaintiff did not appeal the finding of her 35% contributing fault. In her brief before us on this appeal, the plaintiff recognizes that the lower court's decision was not that every high school and college in the State of Louisiana must provide a coach to constantly attend cheerleading practice and performance, but that some degree of adult supervision is necessary.
According to our interpretation of the trial court's reasons for judgment, had Northwestern provided some adult supervision, that adult supervisor would have known that Jennifer and Scott were not ready for the cupie, and would have advised them against *1310 attempting it until they were more advanced in their skills. It was Northwestern's failure to provide this minimum measure of adult supervision that supposedly amounted to a failure to act, and this was held to be a violation of Northwestern's duty.
In finding Jennifer 35% at fault, and reducing her recovery by that measure, the trial court made Jennifer accountable for her own fault, but held Northwestern accountable for the fault of her partner Scott.
A number of cheerleaders testified. They explained the injury potential inherent in cheerleading and known to cheerleaders. Ms. Kerry Moses, co-captain of the squad, testified that cheerleaders expect to fall and to be injured. Charlie Holinger, another co-captain, testified that it was almost understood that injuries would occur. Ms. Annette Deblieux testified that improper landing could lead to injury. Ms. Sharon Rabalais testified that it was common to fall a number of times a day. In fact, she broke her foot in a manner similar to the injury sustained by the plaintiff. Jennifer herself testified that she fell or was dropped at least five times a day. We agree with the trial court that cheerleading on the collegiate level is an activity which poses a definite risk of physical harm to its participants.
Jennifer testified that her partner, Scott, was unprepared for the performance of a Cupie, having never mastered the stunt and having repeatedly dropped her. She explained her participation in the Cupie as caused by Scott cajoling and pressuring her, and said that she finally reluctantly gave in. On the other hand, Jennifer was described by many witnesses as a "noodler". A performer noodles when he is loose when he is supposed to be tight. In her brief before this court, Jennifer declared that proper supervision would have prohibited Scott from attempting the Cupie with her, and that proper supervision would have prevented her from engaging in higher and more dangerous stunts until this alleged noodling habit had been cured.
In view of the trial court's findings of fact and Jennifer's theory of liability, it is inconsistent to hold Jennifer responsible for her share of the fault, but Northwestern responsible for Scott's. Northwestern should have been held responsible for the entire damage, or none at all.
For liability to attach in this case, the plaintiff had to establish that:
(1) The conduct in question was a cause in fact of the resultant harm;
(2) The defendant owed a duty to plaintiff;
(3) The duty owed was breached; and
(4) The risk or harm caused was within the scope of the breached duty.
Fox v. Bd. of Sup'rs of La. State Univ., 576 So.2d 978, 981 (La.1991).
Fox was a similar case involving a rugby player injured during a tournament at LSU. In that case the plaintiff claimed that LSU failed to sufficiently supervise the activities of the LSU rugby club and was liable for the club's negligence in conducting the tournament. The plaintiff, a player from a visiting team, was injured when he attempted to tackle an opposing ball carrier, missed the ball carrier, struck his head on the ground, and broke his neck.
The supreme court in Fox, discussing the situation where there was an alleged failure to act, as we have here, stated that it is necessary for some definite relationship between the parties to exist, such that social policy justifies the imposition of a duty to act upon the defendant. In the present case, Jennifer was a cheerleader for Northwestern, so there was a definite relationship between the parties. However, does social policy justify the imposition of a duty upon Northwestern to provide supervision at cheerleaders' practices?
The supreme court in Fox, supra at page 983, in discussing whether LSU had a duty to monitor the actions of the LSU rugby club in conducting the tournament, stated:
In this case, one of the opportunities offered in the L.S.U. educational experience was the option to voluntarily participate in clubs including the rugby club. Though L.S.U. required the club to submit its charter to the school for approval, required the club to have a faculty advisor, provided the club with some financial assistance, limited office space and equipment, *1311 and allowed the use of the parade grounds for the tournament, these actions did not automatically obligate L.S.U. to scrutinize all of the club activities, nor does it make the club an arm of the university. Part of the educational experience is responsibility gained through the autonomy of operating a club without the administration or faculty second guessing every decision. The participants in the rugby club knew full well the dangers involved in this activity, but chose to participate voluntarily. Though there are risks associated with any athletic endeavor, especially those involving intentional bodily contact, the experiences gained from being part of a team, such as team work, camaraderie, friendship, exercise, team spirit and responsibility, make it reasonable for participation by the students and reasonable for the school to allow the conduct.
The court went on to state that the task of supervising every group, club, or organization at LSU would involve countless man hours and a large budget. Rather than prohibiting the existence of these groups, LSU allowed students to run the clubs.
Participation on the cheerleading squad at Northwestern was on a voluntary basis after being selected at tryouts. It was expected in cheerleading that stunts would not always be performed perfectly and that the top person could be dropped on occasion which might even result in injury. This was why spotters were used. Northwestern's cheerleading squad had two captains who controlled the practices. The cheerleaders had also attended camp where they learned about safety in performing stunts. Dr. Gerald George, a professor in physical education, testified that even when a person has demonstrated the lead-up skills to a cupie, there is still some risk that the person will fall. Robert McKinley, an expert in cheerleading, stated that for the average university squad, a coach was not necessary because they learn safety skills at the training clinics during the summer. He also stated that ultimately, the performer had the choice as to what stunts he or she would perform. Also, in 1990, only three of the fourteen universities in Louisiana had coaches and the remaining universities had advisors who would handle the administration of the squad.
The law requires only that supervision be reasonable and commensurate with the age of the student and the attendant circumstances. Perkins v. State Bd. of Ed., 364 So.2d 183, 185 (La.App. 1st Cir.1978), writ denied 366 So.2d 563 (La.1979).
We conclude that Northwestern owed no duty to its cheerleaders to provide adult supervision to monitor their activities and tell them what stunts they could safely try next. From all descriptions in this record of the nature of cheerleading and stunting, and the inevitability of accidents, it is doubtful that such an expert adult supervisor exists who has the capability of telling cheerleaders what stunts they can safely try next. Certainly, there are not enough such experts to go around to all the colleges and high schools in the state.
Merely having an adult present at the practices would not have added any additional precautions other than those that were already in place. The cheerleaders had attended the required training camps. They were young adults who had been instructed on the proper safety techniques, and what particular stunt each would perform. They used spotters at practices. Considering the policy choice of allowing these students to gain responsibility through autonomy, together with the nigh-impossible burden or providing more supervision, when there was already adequate supervision in place, we find that Northwestern is not liable to the plaintiff herein.
The judgment of the trial court is reversed, and judgment is rendered dismissing the suit of plaintiff at her costs.
REVERSED.
SAUNDERS, J., dissents and will assign reasons.
SAUNDERS, Judge, dissenting.
I respectfully dissent. I do not agree with the analysis of the majority that it is inconsistent to hold Jennifer responsible for her share of the fault, but Northwestern responsible *1312 for Scott's fault with the reasoning that Northwestern should have been held responsible for the entire damage or none at all.
I feel that the principles of comparative negligence were properly administered by the trial court and that the conclusions reached, i.e., that the lack of adult supervision and the lack of a second spotter form the basis of fault, are well within the discretion which is afforded to the trial court. I feel that the judgment of the trial court should have been affirmed.
For the foregoing reasons, I respectfully dissent.