Judge Terri F. Love
hA French Quarter hotel’s fire prevention sprinkler activated, which caused water to leak into the gift shop below and damage merchandise. The gift shop owner’s insurer filed suit against the hotel seeking repayment of insurance proceeds paid to the gift shop owner for the damage. The trial court found in favor of the insurer and ordered payment of $41,662.05, plus court costs and legal interest from the date of demand. The hotel’s appeal followed.
We find that the trial court committed manifest error by finding in favor of the insurer because the insurer failed to meet its burden of proof of the hotel’s negligence. The trial court’s judgment is reversed, and judgment is rendered in favor of the hotel.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 12, 2013, Mardi Gras, a sprinkler head located in the French Market Inn (“Hotel”), owned and operated by Hotel Management of New Orleans, LLC (“HMNO”), was triggered, causing water to leak into and flood portions of the storefront two floors below, operated by Haj-era, Inc. d/b/a Best of NOLA | ¡.(“storeowner”). The storeowner reported that water leaked into the store for almost two hours. HMNO did not attempt to shut off the sprinkler head. Instead, HMNO waited for the fire department to turn the sprinkler off. The storeowner suffered damages as a result.
State Farm Fire and Casualty Company (“State Farm”) insured the storeowner, and paid $41,662.05 in damages on the storeowner’s policy. State Farm then filed a Petition for Damages against HMNO, as a partial subrogee of the storeowner, seeking repayment of the $41,662.05. State Farm added HMNO’s insurer, Companion Property and Casualty Insurance Company (“Companion”) as an additional defendant. Following a bench trial, the trial court found for State Farm and ordered the repayment of the stipulated $41,662.05 in damages, plus court costs and legal interest from the date of demand. HMNO and Companion (collectively “Defendants”), suspensively appealed.
The Defendants contend that the trial court erred by: 1) finding that the sprinkler was defective and that HMNO knew or should have known of the defect, 2) finding that the HMNO employees were negligent, and 3) denying HMNO’s Motion for Involuntary Dismissal.

STANDARD OF REVIEW

“In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard.” Hall v. Folger Coffee Co., 03-1734, p. 9 (La. 4/14/04), 874 So.2d 90, 98. “Under the manifest error standard, a factual finding cannot be set aside unless the appellate court finds that the trier of fact’s determination is manifestly erroneous or clearly wrong.” Detraz v. Lee, 05-1263, p. 7 (La. 1/17/07), 950 So.2d 557, 561. To reverse the factfinder, “an appellate court must review the record in its entirety and (1) find |athat a reasonable factual basis does not exist for the finding, *438 and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous.” Id. “The appellate court must not re-weigh the evidence or substitute its own factual findings because it would have decided the .case differently.” Id. “Where there are two permissible views of the evidence, the fact finder’s - choice between them cannot be manifestly erroneous or clearly wrong, even if the reviewing court would have decided the case differently.” Id.
"Thé manifest error standard of review also applies to mixed questions of law and fact.” A.S. v. D.S., 14-1098, p. 10 (La.App. 4 Cir. 4/8/15), 165 So.3d 247, 254. Conversely, purely legal issues “are reviewed with the de novo standard of review.” Gordon v. Gordon, 16-0008, p. 3 (La.App. 4 Cir. 6/8/16), 195 So.3d 687, 689.
A motion for involuntary dismissal is reviewed using the manifest error standard of review. Ridgeway v. Pierre, 06-0521, p. 4 (La.App. 4 Cir. 1/11/07), 950 So.2d 884, 888.

NEGLIGENCE

The Defendants allege that the trial court erred by finding that HMNO employees were negligent.
“Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” La. C.C. art. 2315(A). Further, La. C.C. art. 2316 states that “[e]very person is responsible for- the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.” In order to impose liability pursuant to La. C.C. art. 2315 or 2316, Louisiana employs the duty-risk -analysis, which requires .the examination of the following five factors elucidated by the Louisiana Supreme Court:
|4(1) the defendant had a duty to. .conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).
Mathieu v. Imperial Toy Corp., 94-0952, pp. 4-5 (La. 11/30/94), 646 So.2d 318, 322.
It is undisputed that the water leaking from HMNO’s sprinkler system caused the damages to the storeowner. The parties all stipulated that the ■ damages were $41,662.05. Thus, the cause-in-fact and damages elements were not at.issue.

Duty

“A threshold issue then in any negligence action is whether the defendant owed the plaintiff a duty.” Meany v. Meany, 94-0251, p. 6 (La. 7/5/94), 639 So.2d 229, 233. “This issue is a legal question for the court to decide.” Id. “The court must make a policy determination in light of the unique facts of the case.” Id. “Thus, the duty-risk analysis requires the court to take into account the conduct of each party as well as the particular circumstances of the case.” Id. “The court may consider various moral, social, and economic factors, including” 1) “the fairness of imposing liability;” 2) “the economic impact on the defendant and on similarly situated parties;” 3) “the need for an incentive to prevent future harm;” 4) “the nature of defendant’s activity;” 5) “the. potential for an unmanageable flow of litigation;” 6) “the historical development of precedent;” and 7) “the direction in which society and its institutions are evolving.” Posecai v. Wal- *439 Mart Stores, Inc., 99-1222 (La. 11/30/99), 752 So.2d 762, 766.
| Jn Louisiana, there is no statutory duty of a business to protect nearby buildings from the water emitting from fire protection sprinkler systems. However, “[t]here is an almost universal duty on the part of the defendant in negligence cases to use reasonable care so as to avoid injury to another.” Boykin v. Louisiana Transit Co., Inc., 96-1932 (La. 3/4/98), 707 So.2d 1225, 1231. “Generally, duty is defined, as the obligation to conform to the standard of conduct associated with a reasonable man in.like circumstances.” Fox v. Bd. of Sup’rs of Louisiana State Univ. & Agr. & Mech. Coll., 576 So.2d 978, 981 (La. 1991).
Having found a general duty, we now examine whether State Farm presented evidence of HMNO’s alleged negligence/breach of duty.

Breach of Duty

Timothy Lawrence, the general manager of the Hotel for HMNO, testified that the fire protection sprinkler system was contracted out to Coastal Protection. Mr. Lawrence stated that Hotel employees were instructed to call the fire department if the sprinkler system came on. .They were not instructed to turn the sprinkler off. The procedure to call the fire department was put in place to prevent the loss of life. Additionally, Mr. Lawrence stated that he did not contact maintenance to shut off the sprinkler system because the fire department was on site. The Hotel was not evacuated, so Mr. Lawrence assumed that no fire was involved. However, no one ever told him there was not a fire. By the time Mr. Lawrence was called, water was already leaking into the store, and the firemen were ensuring there was no fire so they could shut down the sprinkler system and recap the sprinkler head. Finally, Mr. Lawrence testified that he would not have allowed his staff to turn off the water to the sprinkler system because that was not part of their job. He admitted that they did nothing to prevent the flow of water 16into the store.
Abdul Khan, the storeowner, testified that the Hotel employees informed him that they did not know how to'turn off the water. He stated that the fire department came out to the site after an hour or two. Mr. Khan testified that water began to flow into his store around 7:00 p.m. on Mardi Gras and continued for about two hours.
James' Phifer, a fire sprinkler design manager for Coastal Protection, testified that he did not know what caused the sprinkler head to discharge. Terry Lam-kin, an employee of Coastal Protection, testified that the seal on a sprinkler head can be broken by heat or “some kind of manipulation.”
After considering all of the testimony, the trial court found that HMNO had “a duty to maintain the system and proven [sic] that system didn’t function properly, that is what has been suggested, that is what no one has proven any disagreement to, what else do you have, is there anything- else you have to offer the Court?” The trial court further stated:
The Court having heard the testimony finds that the sprinkler in question failed to act properly causing damage to the defendants—to plaintiffs property, I’m sorry, suffered—the T-shirt shop for which State Farm paid damages to its insured
* * #
The Court finds in • favor of State Farm ordering that the amount of 41,-662.05 plus interest and court cost [sic] are due to State Farm and/or it’s insured in connection with the claim asserted-and more. specifically the claims *440 as asserted in the petition ... and I understand your argument, even if I [sic] guest did it, it’s not their fault, it’s your guest. You may have a right against that guest, but that’s a different issue and that’s not in front of me [sic] the issue is whether or not there was damage as a result of something that occurred on your premises that caused harm to these, this insured and the Court finds that that is in fact your responsibility and your obligation because it was in your care, custody and control.
[7The trial court made no findings of negligence. Instead, the trial court’s reasons given on the record align more with strict liability theories outlined in La. C.C. art. 2317[1] and 2317.1,[2] which the trial court previously stated was unproven.[3]
The evidence presented demonstrates that HMNO employees followed the Hotel’s procedure of requiring the fire department to turn off the sprinkler system once activated. As the manager stated, this policy is in place to prevent loss of life. State Farm failed to prove that HMNO acted unreasonably or imprudent by requiring the fire department to clear the area of fire prior to disengaging the activated sprinkler system. There is no evidence that the policy created an unreasonable risk of harm. Additionally, as the trial court stated, there was no proof of a de-feet. As such, we do not find that State Farm proved HMNO’s alleged negligence.
When reviewing for manifest error, we must examine whether a reasonable factual basis exists for the factfinder’s conclusions. As we found that State Farm failed to meet its burden of proof because the record lacks evidence of negligence, we find that there is no reasonable factual basis for the trial court’s judgment. The trial court’s finding that HMNO must reimburse State Farm for the insurance proceeds paid to Mr. Kahn is manifestly erroneous. The judgment of the trial court Ris reversed, and judgment is rendered.

INVOLUNTARY DISMISSAL

The Defendants maintain that the trial court erred by refusing to grant their Motion for Involuntary Dismissal.
La. C.C.P. art. 1672(B) provides that:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to ren *441 der any judgment until the close of all the evidence.
“Following a bench trial, a defendant may move for involuntary dismissal, pursuant to La. C.C.P. art. 1672(B), when the plaintiff has shown no right to relief based upon the facts and law.” Crescent City Cabinets & Flooring, L.L.C. v. Grace Tama Dev. Co., L.L.C., 16-0359, p. 8 (La.App. 4 Cir. 10/19/16), 203 So.3d 408, 414.
As we found that the trial court committed manifest error by ruling in favor of State Farm, the discussion on involuntary dismissal is pretermitted.

DECREE

For the above-mentioned reasons, we find that the trial court committed manifest error by finding that HMNO’s sprinkler system did not function properly and ordering payment to State Farm. State Farm failed to meet its burden of proof that HMNO was negligent. The judgment of the trial court is reversed and rendered.
REVERSED AND RENDERED
LANDRIEU, J., CONCURS WITH REASONS
LOBRANO, J., CONCURS FOR THE REASONS ASSIGNED BY LANDRIEU, J.

. La. C.C. art. 2317 provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.”

. La. C.C. art. 2317.1 provides, in pertinent part: "The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.”

.The trial court previously stated that "It's not a premises defect claim. The allegations contains in, and I agree as relates there is not been any proof of a premises defect ...." The trial court denied HMNO’s Motion for Involuntary Dismissal, and found that HMNO had a duty to maintain the sprinkler system.