Reynaldo **OYUELA**

v.

**SEACOR MARINE (NIGERIA), INC., et al.**

No. Civ.A. 02–3298.

United States District Court, E.D. Louisiana.

Oct. 21, 2003.

Timothy John Falcon, Falcon Law Firm, Marrero, LA, for plaintiff.

James K. Carroll, Stephanie D. Skinner, Fowler, Rodriguez, Kingsmill, Flint, Gray & Chalos, LLP, New Orleans, LA, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

FALLON, District Judge.

### I. *PROCEDURAL HISTORY*

Plaintiff Reynaldo Oyuela (Oyuela) claims to have injured his back when he attempted to move a heavy deck plate from its stowed position in the M/V SMIT LLOYD 25's engine room. The M/V SMIT LLOYD 25 is an offshore supply vessel, which at the time was servicing a drilling rig located off the coast of Nigeria. Oyuela commenced this lawsuit against various affiliates of SEACOR Smit, Inc. asserting causes of action under the Jones Act, general maritime law, the laws of Nigeria, the United Kingdom, and France, to recover damages for his personal injuries. Timely responsive pleadings were filed by the defendants.

The identity of Oyuela's employer, the nature and extent of that employer's activities in this forum, and the relationship among the various affiliates of SEACOR Smit Inc. involve contested issues of fact. These facts raise issues of jurisdiction and choice of law which need to be resolved before the case can proceed to final resolution. The Court, therefore, heard evidence on the limited issues of jurisdiction and choice of law.

The Court having carefully considered the testimony of all witnesses presented at trial, the deposition transcripts of the witnesses proffered in that format, all exhibits tendered during the trial, all pleadings heretofore filed, particularly including the pre-trial order and all relevant attachments, and on the basis of a preponderance of the evidence, and pursuant to Rule 52(a & c) of the Federal Rules of Civil Procedure, hereby enters its findings of fact and conclusions of law on the issues of the Court's jurisdiction and the choice of law applicable to the future course of these proceedings.

### II. *FINDINGS OF FACT*

#### A. *Description of Accident and Claims of Plaintiff*

Plaintiff Reynaldo Oyuela, a Honduran citizen, worked as a second engineer aboard the M/V SMIT LLOYD 25, an oil field supply vessel that operated off the coast of Nigeria. The M/V SMIT LLOYD 25 was owned by SEACOR Smit Offshore (Worldwide) Ltd., a wholly owned subsidiary of SEACOR SMIT Inc., and flew the flag of St. Vincent and the Grenadines during the relevant time period. The vessel ran supplies, such as cargo, fuel, cement, and barite, between the Port of Calabar, Nigeria, and a jack-up drilling rig located in the territorial waters of Nigeria.

On March 11, 2000, the vessel was in its Nigerian port on standby. Oyuela worked with the crew to inspect and clean pipes in order to prepare the ship for dry dock repairs. The pipes were located on the starboard side of the vessel beneath steel deck plates. As Oyuela removed one of the plates, he slipped on grease that was left by the vessel's oiler and injured his back. The plaintiff brought suit under the Jones Act and the general maritime law of the United States to recover for injuries allegedly caused by his employer's negligence and the vessel's unseaworthiness. He later amended his complaint to assert claims under the laws of Nigeria, the United Kingdom, and France. The defendants presently before the Court are SEACOR

SMIT Inc., SEACOR Marine, Inc., and SEACOR Marine (Bahamas) Inc.[1]

## B. *Status of Defendants*

SEACOR SMIT Inc. is a diversified holding company that is publicly traded on the New York Stock Exchange. It is incorporated in Delaware and has its principal offices in Houston, Texas. Through its subsidiaries and affiliates, SEACOR SMIT Inc. operates one of the world's largest fleets of marine support vessels. It does business in Louisiana.

SEACOR Marine, Inc. is a corporation formed under the laws of the State of Delaware. It is a wholly owned subsidiary of SEACOR SMIT Inc. and its principal business establishment is in Morgan City, Louisiana.

SEACOR Marine (Bahamas) Inc. was formed under the laws of the Bahamas, and was a Bahamian corporation on March 11, 2000. In March 2003, SEACOR Marine (Bahamas) Inc. changed its citizenship to that of the Marshall Islands.

The parties agree that this Court has jurisdiction over SEACOR SMIT Inc. and SEACOR Marine Inc. The issue is whether there is jurisdiction over SEACOR Marine (Bahamas) Inc. To address this issue it is necessary to focus on the structure of these entities and their relationships to each other.

## C. *Interrelationship of Defendants*

In 1995, Oyuela was interested in obtaining employment as a chief engineer with SEACOR Marine, Inc. A Honduran friend directed Oyuela to telephone Mr. Rodney Coco, the personnel manager at SEACOR Marine, Inc. in Morgan City, Louisiana.

Oyuela was a licensed chief engineer, and Mr. Coco instructed Oyuela to see Simon Kawas, a Honduran agent of SEACOR Marine (U.K.) Ltd., another SEACOR affiliate. Oyuela visited Mr. Kawas in Honduras, who provided him with an application for employment. SEACOR Marine, Inc. hired Mr. Oyuela via a letter of appointment issued by Mr. Coco. Oyuela's effective date of hire was December 11, 1995. Between November 1995 and April 2001 Mr. Oyuela received from SEACOR Marine, Inc. at least fifteen assignments to work aboard different SEACOR affiliated vessels. One of those vessels was the M/V SMIT LLOYD 25. Oyuela was working as second engineer aboard the M/V SMIT LLOYD 25 for approximately one year before the accident.

In 1998, SEACOR SMIT, Inc. made a business decision to employ its foreign seamen through SEACOR Marine (Bahamas) Inc., which at the time was a Bahamian corporation. On June 24, 1998, Mr. Oyuela signed an employment agreement with SEACOR Marine (Bahamas) Ltd., which is the same entity as SEACOR Marine (Bahamas) Inc. SEACOR Marine (Bahamas) Inc. employs approximately 220 foreign seamen at any given time, including approximately 30 Hondurans. SEACOR Marine (Bahamas) Inc. has no employees other than foreign seamen. The company has corporate officers but does not hold meetings and owns no tangible assets. Mr. Lenny Dantin is the Vice President of SEACOR Marine, Inc., from which he also receives a salary. He is also the Vice President of SEACOR SMIT, Inc. and the Assistant Secretary of SEACOR Marine (Bahamas) Inc., but he is not

---

**1.** The plaintiff's supplemental complaint names twelve SEACOR affiliates in this action. The corporate structure of SEACOR Smit Inc. and changes in the relationships among some of its international affiliates made it initially difficult to identify the SEA-COR affiliate that served as Mr. Oyuela's employer. The plaintiff voluntarily dismissed his action, without prejudice, against all SEACOR affiliates except SEACOR Marine, Inc., SEACOR SMIT Inc., and SEACOR Marine (Bahamas) Inc.

compensated for those positions. Mr. Dantin testified that his position as Assistant Secretary made him a corporate officer of SEACOR Marine (Bahamas) Inc. Mr. Dantin works at SEACOR Marine, Inc.'s office in Morgan City, Louisiana. He has lived in Gonzales, Louisiana, for four years. Mr. Dantin, in his capacity as an officer of SEACOR Marine (Bahamas) Inc., was personally served with the plaintiff's complaint at SEACOR Marine, Inc.'s office in Morgan City, Louisiana.

SEACOR Marine (U.K.) Ltd., a SEACOR entity located in the United Kingdom, acts as the official personnel administrator for seamen employed by SEACOR Marine (Bahamas) Inc. Due to the difference in time zones, employees of SEACOR affiliates who live in Honduras are unable to communicate with SEACOR Marine (U.K.) Ltd.'s British office after 10:00 a.m. local time. The personnel department of SEACOR Marine, Inc. in Morgan City, assists the Honduran SEACOR Marine (Bahamas) Inc. seamen when the British office is closed. Simon Kawas, SEACOR Marine (U.K.) Ltd.'s agent in Honduras, conducts most of his business by telephone, including the work he performs to assist SEACOR Marine (Bahamas) Inc.'s Honduran seamen. SEACOR Marine, Inc. in Morgan City, acts as the "go-between" between Kawas and SEACOR Marine (U.K.) Ltd. When Oyuela needed medical care following his injury, Kawas dealt with SEACOR Marine, Inc.'s Morgan City office.

At times, SEACOR Marine, Inc. provides personnel assistance for individuals who work under employment agreements with SEACOR Marine (Bahamas) Inc. SEACOR Marine, Inc. has assisted Honduran seamen with travel arrangements. SEACOR Marine, Inc. assisted in arranging and paying for Mr. Oyuela's medical treatment at the request of Mr. Kawas after Oyuela's accident.

SEACOR Marine, Inc. issues the payroll checks for the Honduran seamen employed by SEACOR Marine (Bahamas) Inc., including Mr. Oyuela. The record reveals that the Honduran seamen wished to be paid in American dollars and that logistical problems made wire transfers to those seamen impractical and unreliable. To remedy the problem, SEACOR Marine, Inc. issued checks to the Honduran seamen and shipped the checks to Honduras via an international delivery service. SEACOR Marine, Inc. would then credit its account, and the other SEACOR Marine affiliates, such as SEACOR Marine (Bahamas) Inc., would record the corresponding debit. SEACOR Marine, Inc. received no managerial or administrative fee for performing services or issuing paychecks for other SEACOR affiliates.

The Court must analyze the structure of the defendants and their intricately woven relationships to discern whether or not it has jurisdiction, and if so, the law applicable to the future course of these proceedings.

### III. *LAW AND ANALYSIS*

#### A. *Personal Jurisdiction*

█ Any analysis of personal jurisdiction must begin with a review of the requisites necessary to satisfy due process. Due process protects a defendant's liberty interest by preventing the party from being hailed into a court or subjected to judgments in a jurisdiction in which the defendant has no connection. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir.1999). A defendant may thus be brought into a lawsuit only if the defendant is amenable to service of process under the forum state's long arm statute in a manner that is consistent with due process. Louisiana's long-arm statute extends personal jurisdiction to the limits of due process. La.Rev.Stat. Ann.

§ 13:3201(B) (West 2002); *Fox v. Bd. of Supervisors of Louisiana State Univ.*, 576 So.2d 978, 983 (La.1991). As a result, this court need only determine whether subjecting the SEACOR defendants, namely SEACOR SMIT Inc., SEACOR Marine, Inc., and SEACOR Marine (Bahamas) Inc., to suit in Louisiana would offend due process. The parties concede the Court's jurisdiction over SEACOR SMIT Inc. and SEACOR Marine, Inc. Defendant SEACOR Marine (Bahamas) Inc., the foreign corporation with whom Oyuela had a written employment agreement, challenges the Court's exercise of personal jurisdiction in this case.[2]

1. *Personal Jurisdiction Over a Foreign Corporation Based on Service of Process*

■ As mentioned, the plaintiff sued SEACOR Marine (Bahamas) Inc. and personally served Mr. Lenny Dantin, one of the company's officers. Jurisdiction achieved through personal service while a defendant is temporarily within the forum is known as transient jurisdiction. The question is whether this is sufficient in and of itself to satisfy due process.

In *Amusement Equipment, Inc. v. Mordelt*, 779 F.2d 264, 267 (5th Cir.1985), the Fifth Circuit upheld the exercise of jurisdiction over the general manager of a foreign corporation who was served with process while temporarily in New Orleans. *Id.* at 270. The Court, however, declined

to rule whether it could exercise transient jurisdiction over the foreign corporation based on Louisiana's then existing versions of the long-arm and service statutes.[3] Moreover, at the time *Amusement Equipment* was decided, commentators were divided over whether transient jurisdiction survived the adoption of the minimum contacts analysis of the *International Shoe* line of cases.

■ Nevertheless, in *Burnham v. Superior Court of California*, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990), the Supreme Court concluded that personal service of process while a party is in the forum is a constitutionally valid basis for exercising jurisdiction. *Burnham*, however, lacks a majority opinion, and the Court split over whether traditional bases for exercising jurisdiction (such as service of process within the jurisdiction) *always* satisfied due process or whether those bases *generally* satisfied due process subject to the constraint imposed by "contemporary notions of due process" (i.e. some minimal contacts with the forum). *Id.* at 610—11, 633, 110 S.Ct. 2105. Regardless of the Supreme Court's rationale, *Burnham* makes it clear that personal service of process upon an individual who is voluntarily present in the forum is a sufficient basis for jurisdiction. Furthermore, the exercise of transient jurisdiction has been upheld in circumstances where the contacts have been more fleeting than those

**2.** At the time of Oyuela's injury, SEACOR Marine (Bahamas) Inc. was a Bahamian corporation. It is now incorporated under the laws of the Marshall Islands.

**3.** *Id.* at 267. The Fifth Circuit believed that the long-arm statute did not reach foreign corporations that had not appointed a Louisiana agent for service of process and had not "done business" in Louisiana. *Id.*

The Louisiana legislature clarified any uncertainty about the scope of the long-arm statute, amending it to provide that "a court

of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States." La.Rev. Stat. Ann. § 13:3201(B) (West 2002). The commentary indicates that the addition of Subsection (B) to the long-arm statute "ensures that the long-arm process extends to the limits allowed by due process, while retaining a valuable list of specific examples of contacts sufficient to give rise to in personam jurisdiction." 1987 La. Sess. Law Serv. 418 (West) cmt.

presented in this case. Wright and Miller note, " '[t]agging'—the practice of serving defendants who are only transitorily present in the forum state—also remains widely accepted, even though it can occur when the defendant's presence in the state is fortuitous or under circumstances in which the minimum contacts test would not be satisfied." 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067.3 (3d ed.2002). In the present case not only was an officer of SEACOR Marine (Bahamas), Inc. voluntarily within the forum, but he also lives and works within the territorial jurisdiction of this Court.

The state law constraints that prevented the exercise of jurisdiction in *Amusement Equipment* are no longer present. Louisiana's amended long arm statute now extends to the limits of due process. *Fox,* 576 So.2d at 983. In addition, the Federal Rules of Civil Procedure provide that service upon a foreign corporation shall be effected either pursuant to the law of the state in which the district court is located, "or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process[.]" Fed. R. Civ Pro. 4(h)(1). Thus the case law, procedural rules, and commentators all support the concept of jurisdiction based on personal service within the forum.

The defendant argues that *Burnham* is limited to natural persons and not corporations. *Burnham's* reassertion of the general validity of transient jurisdiction provides no indication that it should only apply to natural persons. Prior case law suggests that service of process upon a corporate agent provides a sufficient basis to assert jurisdiction over nonresident corporations. *See Snyder v. Eastern Auto Distributors, Inc.,* 357 F.2d 552, 556 (4th Cir.1966) (holding that the fact that the

agent only was temporarily within the jurisdiction did not prevent service of process on the corporation through him). Moreover, recently the First Circuit addressed the exact issue of whether a court could obtain personal jurisdiction over a foreign corporation where service was effected upon a corporate officer who was temporarily present within the forum. *Northern Light Tech., Inc. v. Northern Lights Club,* 236 F.3d 57, 62 (1st Cir.2001). The foreign corporation's officer, who was also a defendant, was served with process while he was temporarily in the forum to attend a related court proceeding. Citing rule 4(h)(1) the court concluded,

> We believe that the service of process effected upon [the officer] also conferred personal jurisdiction over the other defendants. [The officer] serves as the president of both Northern Lights Club, an unincorporated association, and 641271 Alberta, Ltd., a foreign corporation. *See* Fed.R.Civ.P. 4(h)(1) (permitting personal service of process upon officers of unincorporated associations and foreign corporations).

*Id.* at 64 n. 10.

■ In the present case, this Court obtained personal jurisdiction over SEACOR Marine (Bahamas) Inc. when the plaintiff personally served Mr. Lenny Dantin, Assistant Secretary of SEACOR Marine (Bahamas) Inc., at SEACOR Marine, Inc.'s offices in Morgan City, Louisiana. Mr. Dantin resides within the forum, and has lived there for several years. Service of process on Mr. Dantin provided SEACOR Marine (Bahamas) Inc. with adequate notice of the litigation and is a sufficient basis to assert personal jurisdiction over the company. Furthermore, in this case there is more than just service of process on an officer of SEACOR Marine (Bahamas) Inc. to satisfy the requisites of jurisdiction.

### 2. Jurisdiction Based on the "Minimum Contacts" of SEACOR Marine (Bahamas) Inc.

Personal jurisdiction may also be asserted over a nonresident defendant where that defendant possesses certain "minimum contacts" with the forum such that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The nature and extent of those "minimum contacts" determines whether subjecting a defendant to personal jurisdiction violates due process in a particular case. These contacts may give rise to general or specific in personam jurisdiction.

 Where the defendant's contacts with the forum state are "continuous and systematic," they subject the nonresident defendant to general jurisdiction. *Dickson Marine*, 179 F.3d at 337. Where the defendant's "minimum contacts" with the forum are not continuous and systematic, the defendant may still be subject to some litigation in the forum court, but that litigation must arise out of or relate to the defendant's contacts with the forum jurisdiction. *Kelly v. Syria Shell Petroleum Dev.*, 213 F.3d 841, 854 (5th Cir.2000); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

 In this case, SEACOR Marine (Bahamas) Inc. has sufficient contacts with Louisiana to allow this Court to exercise general jurisdiction without offending due process. First, the company's Assistant Secretary, Lenny Dantin, works and resides in Louisiana. Second, SEACOR Marine (Bahamas) Inc. paid its Honduran seamen with paychecks issued by the Morgan City, Louisiana, SEACOR affiliate. Although the accounts were later balanced and the debit recorded by SEACOR Marine (Bahamas) Inc., they nonetheless are still relevant under the *International Shoe* analysis.

SEACOR Marine (Bahamas) Inc.'s third group of contacts with Louisiana, and the most significant, were those that arose from the company's use of SEACOR Marine, Inc. as a "go between" on personnel matters. Before 1998, SEACOR Marine Inc. directly employed Mr. Oyuela and other foreign seamen. Now, SEACOR Marine (Bahamas) Inc. employs those foreign seamen, but the factual record is replete with SEACOR Marine (Bahamas) Inc.'s extensive reliance on SEACOR Marine, Inc. to administer personnel matters.[4]

SEACOR Marine (Bahamas) Inc.'s reliance on other SEACOR affiliates is a necessity that arises by corporate design. It has no employees of its own other than foreign seamen, so all personnel matters must be administered by another SEACOR entity. Officially, SEACOR Marine (U.K.) Ltd. managed personnel matters for the Bahamian entity. Due to the difference in time zones, however, whenever a personnel problem arose after midmorning in Honduras, Morgan City was called to provide assistance. For instance, when Reynaldo Oyuela was injured and required medical care in Honduras, Mr. Kawas contacted SEACOR Marine, Inc. at the Morgan City office, which reimbursed his medical costs.

---

**4.** The plaintiff contends that SEACOR Marine Inc.'s extensive involvement with the Bahamian entity's personnel affairs after 1998 reveals that only the names have changed. The record indicates that even that nominative distinction was not always present. At times Mr. Rodney Coco and Ms. Jan Covington, who worked from SEACOR Marine, Inc.'s Morgan City office, made travel arrangements for the foreign seamen and issued letters of appointment in the name of "SEACOR Marine, Inc." to facilitate international travel and immigration.

The contacts SEACOR Marine (Bahamas) Inc. had with Louisiana were not isolated. They were frequent and substantial. The contacts directly related to the management of SEACOR Marine (Bahamas) Inc.'s personnel who were all foreign seamen. To uphold personal jurisdiction over SEACOR Marine (Bahamas) Inc. for a seaman's job-related injury does not offend traditional notions of fair play or substantial justice.

In addition, there is also another basis for this Court's jurisdiction, namely, the activities of SEACOR Marine, Inc. and SEACOR SMIT Inc.

### 3. Jurisdiction Based on the Minimum Contacts of SEACOR SMIT Inc. and SEACOR Marine, Inc.

■ The facts of this case reveal substantial interaction between the two SEACOR affiliates, SEACOR Marine, Inc. and SEACOR Marine (Bahamas) Inc., and also between SEACOR SMIT Inc. and SEACOR Marine (Bahamas) Inc. Even absent SEACOR Marine (Bahamas) Inc.'s contacts with Louisiana, it would be appropriate to include SEACOR SMIT Inc. and SEACOR Marine, Inc.'s contacts with Louisiana in the *International Shoe* analysis to determine whether jurisdiction exists over SEACOR Marine (Bahamas) Inc.

■ Ordinarily, where a parent and an affiliate or two affiliate companies maintain separate identities, jurisdiction over one does not provide a basis of jurisdiction over the other. *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925). However, when an affiliate is nothing more than a "shell," it can be considered an agent or alter ego of the parent or its co-affiliate and their contacts with the forum can subject the "shell" company to jurisdiction.

The Fifth Circuit recently reasserted its standard for establishing personal jurisdiction over a corporation based on the contacts of a subsidiary in *Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d 841, 856 (5th Cir.2000). The Court summarized its earlier pronouncement into a test:

[S]o long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other.... Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes.... The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship.... All the relevant facts and circumstances surrounding the operations of the parent and subsidiary must be examined to determine whether two separate and distinct corporate entities exist.

*Id.* (quoting *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir.1983)).

The Fifth Circuit's test probes for facts suggesting that if the subsidiary is nothing more than the alter ego of the parent, then the one company's contacts with the forum may be used as a basis of jurisdiction over the other. Because the inquiry requires an examination of "all the relevant facts and circumstances," the test is necessarily vague. The facts of *Hargrave* provide some guidance on the test's boundaries. In *Hargrave*, the plaintiff attempted to obtain personal jurisdiction over an English parent corporation based on the contacts of an American subsidiary. The court presumed that the subsidiary's contacts with Texas were adequate to satisfy due process. The court then determined that although the parent "had complete authority over general policy decisions at [the subsidiary], including such matters as the selection of product lines, hiring and

firing of [the subsidiary's] officers, and approval of sizable capital investments," it did not have operational control over the day-to-day decisions. 710 F.2d at 1160.

▮ Thus, the court held that the subsidiary's contacts did not provide personal jurisdiction over the parent. The court reasoned that "[d]ay-to-day business and operational decisions ... were made by [the subsidiary's] officers. [The subsidiary] had sole responsibility for operation and management of its manufacturing facilities, research and development of new products, and marketing and sales strategies." *Id.* at 1160. The implication of that rule is that where a subsidiary does not maintain independence in day-to-day operations, a court may use the parent's contacts to obtain jurisdiction over the subsidiary, or *vise versa.*

SEACOR Marine (Bahamas) Inc. has no administrative personnel of its own. Its board has never met. Day-to-day operational issues were resolved by other SEACOR affiliates, including the substantial assistance provided by SEACOR Marine, Inc. Under the circumstances, it does not offend due process to consider SEACOR SMIT Inc.'s or SEACOR Marine, Inc.'s contacts with the forum and find the existence of personal jurisdiction over SEACOR Marine (Bahamas) Inc.

In sum, in the present case this Court can assert personal jurisdiction over SEACOR Marine (Bahamas) Inc., a foreign corporation, under any one of three jurisdictional bases. First, Oyuela served Mr. Lenny Dantin, one of SEACOR Marine (Bahamas) Inc.'s corporate officers, while he was present within the forum. Second, SEACOR Marine (Bahamas) Inc. has sufficient minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. Third, SEACOR Marine (Bahamas) Inc. does not maintain a corporate existence independent of SEA-COR Marine, Inc. and SEACOR SMIT Inc. Consequently, it is appropriate to consider the contacts that SEACOR Marine, Inc. and SEACOR SMIT Inc. have with the forum to determine whether jurisdiction exists over SEACOR Marine (Bahamas) Inc. Any one of these theories would justify jurisdiction over SEACOR Marine (Bahamas) Inc. Since all of them are present in this case, the requirements of due process are clearly satisfied and this Court has jurisdiction over SEACOR Marine (Bahamas) Inc.

B. *Section 688(b) and the Plaintiff's claims*

The defendants argue that even if the Court has jurisdiction, section 688(b) of title 46 of the United States Code prevents Oyuela from proceeding in the courts of the United States. In short, the defendants argue that Section 688(b) not only excludes the application of United States law but also strips the Court of jurisdiction. Section 688 provides in relevant part:

(b)(1) No Action may be maintained under subsection (a) of this section [The Jones Act] or under any other maritime law of the United States for maintenance and cure or for damages for the injury or death of a person who was not a citizen or permanent resident alien of the United States at the time of the incident giving rise to the action if the incident occurred-

(A) while that person was in the employ of an enterprise engaged in the exploration, development, or production of offshore mineral or energy resources—including but not limited to drilling, mapping, surveying, diving, pipelaying, maintaining, repairing, constructing, or *transporting supplies*, equipment or personnel, but not including transporting those resources by a vessel con-

structed or adapted primarily to carry oil in bulk in the cargo spaces; and (B) in the territorial waters or waters overlaying the continental shelf of a nation other than the United States, its territories, or possessions.... 

(2) The provisions in paragraph (1) of this subsection shall not be applicable if the person bringing the action establishes that no remedy was available to that person—

 (A) under the laws of the nation asserting jurisdiction over the area in which the incident occurred; or

 (B) under the laws of the nation in which, at the time of the incident, the person for whose injury or death a remedy is sought maintained citizenship or residency.

46 U.S.C. app. § 688(b) (2003) (emphasis added).

 ■■■ In discerning the meaning of a statute courts must "look to the plain language of the statute, reading it as a whole and mindful of the linguistic choices made by Congress." *Whatley v. Resolution Trust Corp.,* 32 F.3d 905, 909 (5th Cir. 1994). The plain language of Section 688(b) forecloses the Jones Act's application to the Plaintiff's claim. Likewise, Section 688(b)(1)'s broad reference to "any other maritime law of the United States for maintenance and cure or for damages for ... injury or death" denies Oyuela relief under the general maritime law of the United States. *Camejo v. Ocean Drilling & Exploration,* 838 F.2d 1374, 1377 (5th Cir.1988).

 ■■■ Although the plain language of Section 688(b) denies Plaintiff Reynaldo Oyuela a remedy under federal law, the statute does not forestall Oyuela's foreign law claims. Section 688(b) clearly targets the Jones Act and "any other maritime law of the *United States*". It says nothing about a court's jurisdiction; nor does it mention excluding the application of foreign law. In fact the opposite is true. The plain language of Section 688(b) clearly forecloses only "the maritime law of the United States." [5] This compels the conclusion that Section 688(b) does not strip federal courts of jurisdiction; it merely denies the foreign plaintiff a cause of action under the substantive maritime tort and compensation laws of the United States. *See Stier v. Reading & Bates Corp.,* 992 S.W.2d 423, 434 (Tex.1999). Therefore, this Court has jurisdiction to consider Oyuela's claims for relief pursuant to either the laws of the Nigeria, the United Kingdom, or France.

## C. *Forum Non Conveniens*

 ■■■ In the defendants' original answer and in their answer to the plaintiff's supplemental complaint, the defendants assert that Plaintiff Oyuela's claims should be dismissed under the doctrine of forum non conveniens. Under this doctrine a court may decline jurisdiction and dismiss the case to be tried in another forum. *Gulf Oil v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Karim v. Finch Shipping Co., Ltd.,* 265 F.3d 258, 268 (5th Cir.2001).

---

**5.** A result adverse to this can be supported by scrutinizing and perhaps piecing together comments made by various legislators during the passage of Section 688(b) The commentary of some members of Congress suggests that they did not intend for foreign seamen to be able to sue in American courts except in instances where no foreign forum was available. *See, e.g.* 128 Cong. Rec. 25,426 (1982) (comments of Representative Livingston); 128 Cong. Rec. 25,423 (1982) (comments of Representative Breaux); 128 Cong. Rec. 29,924 (1982) (comments of Senator Long). But when the language of the statute is clear and free of ambiguity, as it is in this instance, it is unnecessary and, in fact inappropriate, to turn to "legislative intent."

■ A court's exercise of forum non conveniens is governed by a two-step framework. First, the Court must verify the existence of an alternative forum. *Id.* (quoting from *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). That alternative forum must be available as well as adequate. *McLennan v. Am. Eurocopter Corp., Inc.,* 245 F.3d 403, 424 (5th Cir.2001). "A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum." *Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208, 221 (5th Cir.2000). "A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Id.*

■ The first step of the forum non conveniens framework is satisfied here. The defendant is amenable to process in the United Kingdom. In addition, even the plaintiff recognizes that the substantive law of the United Kingdom provides adequate alternative remedies to those offered in the courts of the United States.

■ The second step of the forum non conveniens framework requires the court to "consider whether 'certain private and public interest factors weigh in favor of dismissal.'" *Karim,* 265 F.3d at 268 (quoting *McLennan v. Am. Eurocopter Corp.,* 245 F.3d 403, 424 (5th Cir.2001)). Those "private" interest factors are:

"[T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."

*Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839.

The public interest factors are:

[T]he administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co.,* 454 U.S. at 241 n. 6, 102 S.Ct. 252 (quoting *Gulf Oil,* 330 U.S. at 509, 67 S.Ct. 839).

In the second step analysis, no one factor is given conclusive weight, but the "central focus" of the forum non conveniens inquiry is on convenience. *Dickson Marine Inc. v. Panalpina, Inc.,* 179 F.3d 331, 342 (5th Cir.1999).

In this case, the private interest factors weigh in favor of dismissal under the second step of the forum non conveniens framework. Oyuela's personnel records are maintained in the United Kingdom. The base of operations of SEACOR Marine (Bahamas) Inc. is a SEACOR affiliated office in Loewstoft, England. Two key witnesses, Mr. Richard Ryan and Ms. Carolyn Attew live and work in the United Kingdom. In addition, Oyuela and SEACOR Marine (Bahamas) Inc. entered into four employment agreements between June 24, 1998 and April 12, 2001, each of which contains the same arbitration, forum selection, and choice of law provisions. (Ex. P5 at 3,¶ 15). Those agreements, which were executed at Great Yarmouth, U.K., specify that the substantive law of England shall govern the contract and provide that arbitration in London shall be the parties' dispute resolution method. Thus the parties themselves expressed a preference for British law and a British forum. All of these private factors weigh in favor of dismissal.

The public interest factors also favor dismissal. No substantive American law remains to be applied. Dismissal of the case avoids unnecessary problems in the conflict of laws analysis and in the interpretation of British law. The courts of the United Kingdom have expertise and a significant interest in interpreting their laws.

The legal system of the United Kingdom is available to the Plaintiff, and the remedies under that system of laws are those that Oyuela now seeks. This controversy should be resolved there and not here. The Court's dismissal is conditioned on four requisites to protect Oyuela from the burden of refiling in the United Kingdom. *Nolan v. Boeing Co.,* 762 F.Supp. 680, 685, *aff'd by* 919 F.2d 1058, 1068 (5th Cir.1990). The Court will reassume jurisdiction if any of these conditions is not met. *Robinson v. TCI/US West Communications Inc.,* 117 F.3d 900, 907 (5th Cir.1997). The matter shall be dismissed provided that (i) the defendants submit to service of process and jurisdiction in the appropriate United Kingdom forum; (ii) plaintiffs shall initiate appropriate proceedings within 120 days of the order of dismissal; (iii) defendants shall formally waive any statute of limitations defense that has matured since the commencement of these actions in the United States District Court for the Eastern District of Louisiana; (iv) defendants shall agree to satisfy any final judgment rendered by the U.K. forum. Should the parties fail to satisfy any of these conditions promptly, this Court shall resume jurisdiction upon request and reopen the case. *Nolan,* 762 F.Supp. at 685; *see also Robinson,* 117 F.3d at 907.

## IV. *CONCLUSION*

Accordingly, IT IS ORDERED that this matter is hereby dismissed provided that: (i) the defendants submit to service of process and jurisdiction in the appropriate United Kingdom forum;

(ii) plaintiffs shall initiate appropriate proceedings within 120 days of the order of dismissal;

(iii) defendants shall formally waive any statute of limitations defense that has matured since the commencement of these actions in the United States District Court for the Eastern District of Louisiana;

(iv) defendants shall agree to satisfy any final judgment rendered by the U.K. forum administratively closed.

IT IS FURTHER ORDERED that the case be administratively CLOSED.